## WITT v. CHURCHWELL.

### Opinion delivered February 18, 1924.

VENDOR AND PURCHASER—ESTOPPEL.—Where a vendee of land resold it to others and they paid him therefor, the fact that the vendor, holding notes for the purchase money, subsequently mentioned to some one that the vendee had agreed to give him a mortgage upon another tract of land to secure the purchase money notes, did not estop the vendor from enforcing his lien as against the purchasers of the land, where the vendee died without executing his agreement to give other security.

Appeal from White Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*John E. Miller* and *C. E. Yingling,* for appellant.

This case calls for the application of the doctrine of equitable estoppel. It was not necessary for the appellant to show actual fraud on the part of appellee, or to

show acts done by him with the actual intention of deceiving appellant. 2 Pomeroy, Eq. Jur., 4th ed., § 803, pp. 1639-1642; *Id.*, § 805, pp. 1643-1652; 97 Ark. 43; 125 Ark. 146; 131 Ark. 77. Appellee, with full knowledge, placed his father-in-law in a position to commit a fraud upon appellant. 27 Cyc., p. 1237, § 3; 19 R. C. L. 411, § 191. See also 27 Cyc., p. 1225, § H.

*Brundidge & Neelly,* for appellee.

The law cited by appellant has no application in this case. There is no contention, neither was there any attempt to prove, that there was any fraudulent design on the part of appellee to procure the purchase of the land by appellant from Pearson; and there was no conduct shown that was intended or calculated to cause appellant to alter his condition, or do any act, to his detriment. 150 Ark. 570.

McCULLOCH, C. J. This is an action instituted by appellee to foreclose the vendor's lien on a tract of land in White County. Appellee owned the tract of land in question, and sold it to F. W. Pearson for the total consideration of $1,600, of which the sum of $300 was to be paid in cash, and three promissory notes were executed by Pearson to appellee for the balance of the price, one note for $300 and two notes for $500 each. It is conceded that the note for $300 was paid, and this action is to recover on the other two notes, aggregating $1,000 and interest. Pearson sold and conveyed the land to appellant Witt and one Taylor. Taylor subsequently died, and appellant, who was one of the defendants below, claims that the land was purchased as the property of a copartnership between himself and Taylor, and that they bought the land primarily to get the timber, and had cut the timber and removed it. The consideration for the deed executed by Pearson to appellant and Taylor was paid partly in cash, and notes were executed for the remainder, which notes were subsequently paid.

Appellant defends against the right of appellee to foreclose the lien on the ground, first, that appellee's conduct estopped him to assert a lien on the land as against

the subsequent purchasers, and second, that he had actually released the lien by agreeing with Pearson, when the latter offered to pay the notes, to treat it as a payment and reloan the money to Pearson.

The issues of fact were tried before the court on oral testimony, which has been properly preserved in the record, and the chancellor found against appellant on the issues, and rendered a decree in favor of appellee, foreclosing the lien for the full amount claimed. Pearson was appellee's father-in-law, and died shortly before the commencement of this action.

Appellant's brother testified that, about a month before Pearson's death, he met appellee on the street, and that the latter stated to witness that Pearson offered to pay him the money on the notes, but that he had not actually received the money, and had loaned the money back to Pearson "in some way," and that Pearson was to give him a deed of trust on another tract of land to secure the debt. Witness testified further that he did not tell his brother about this conversation until after the commencement of the present action.

It is undisputed that appellant and Taylor paid off their notes to Pearson nearly two years before Pearson's death. Appellant testified that, when he paid the money to Pearson, the latter promised to pay it on the notes to appellee and discharge them, and he further stated that he "kept after" Pearson, but neglected to see that the money was thus paid and the notes of appellee discharged.

Pearson's widow testified that, shortly after her husband's death, she had a conversation with appellee, in which he stated to her that Pearson had offered to pay him the money on the notes, but that he did not take it, and also that appellee told her that Pearson had agreed to give him other security in the form of a mortgage on a tract of land.

Appellee testified in his own behalf, and denied that he had any conversation with appellant's brother, or that

he made the statements to Pearson's wife as testified to by her.

Even if we should treat the testimony of appellant's brother and Mrs. Pearson, concerning the statements of appellee, as preponderating evidence against the denial of appellee himself, we do not think that the testimony is sufficient to warrant a finding that appellee's conduct was sufficient to work an estoppel, or that it amounted to a payment of the notes by Pearson to appellee and a relending of the money by the latter back to Pearson. The testimony of appellant's brother on this subject is too vague. Here is his precise language in testifying on the subject: "I met Mr. Churchwell on the street at Bradford, and he came up to me and told me about Mr. Pearson owing a note on this land that my brother and Taylor had bought over there, and the way I understood it, Mr. Pearson had offered him the money, and he did not receive the money on this note, and he loaned it back to him some way, and he was to give him a deed of trust on eighty acres of land farther up in the bottom somewhere, and he came down that day to get this deed, and Mr. Pearson was in a condition that he could not make it." Further on in his testimony he made this statement: "Q. Did I understand you to say he said Mr. Pearson had offered him the money before? A. Yes, but he didn't take the money, or loaned it back to him. I didn't pay much attention to it." This conversation, according to the testimony, occurred about a month before Pearson died, which was long after the payment of the notes to Pearson by appellant and his partner, and they were not misled in any way, for the reason that the witness says he did not mention it to his brother until after Pearson's death and until after the present action was instituted. There was no injury resulting from the conversation, and therefore there could be no estoppel. Neither are the statements of the witness sufficient to prove that the money was paid and was re-lent to Pearson. There is no evidence in the case that the notes were ever surrendered or that any new notes or additional security was ever given.

The testimony of Mrs. Pearson as to appellee's admission to her merely tends to show that there was an unperformed agreement between appellee and Pearson, that appellee was to take other security from Pearson and release the liens on the land in controversy. There is no pretense that such an agreement, if made, was ever carried out; therefore the agreement did not constitute a release of the lien.

One of the notes sued on has been lost, and the action was originally instituted on the other note, but the complaint was subsequently amended so as to include the lost note. It is insisted that the court erred in decreeing recovery on the lost note as well as the other one.

Appellee explained his failure to inform his attorneys about the lost note and include it in the action as originally instituted, by stating that he did not think that he could recover on a lost note, and was afraid that he would not be able to find the note, but that later he mentioned the matter to his attorneys, and the lost note was included in the complaint.

Appellant's brother and Mrs. Pearson both testified that, in their conversations with appellee, he only mentioned having one note and only claimed a debt of $500 against the land. If there was any testimony tending to show that the lost note claimed by appellee was never, in fact, executed, or that the note had been paid, appellee's conduct in failing to inform his attorney about it and to include it in the suit, together with other testimony tending to show that he had made no mention to the witnesses of the lost note, would be cogent circumstances against appellee in his contention that he is the owner of the lost note and that it is unpaid. But it is undisputed that there were two notes for $500 each. The deed executed by appellee to Pearson recites the two notes, as well as the $300 note, which the evidence shows was paid. There is no testimony tending to show that the lost note was ever paid. Appellee himself testified positively that he lost or misplaced the note and had never been able to find it, and

that it was unpaid. We are of the opinion that the chancellor was justified in finding from the evidence that the note had been executed and had never been paid.

Decree affirmed.